The issue in this case is a factual determination. The petitioner made a false statement at his immigration hearing denying that he had committed a shoplisting offense at a Mervyn store in 1996. If he lied in order to gain an immigration benefit, he would have been charged with fraud. He may be barred from discretionary relief under Section 106F of the Immigration and Nationality Act. However, if he lied in order to avoid embarrassment or in the shame of having his children and wife learn of this incident, then he's not subject to the statutory bar. What's particularly tragic about this case is that but for the false statement, this would have been an easily grantable case. His wife and his daughter, who were co-respondents with him initially in the proceedings, were both granted cancellation of removal. The petitioner has four U.S. citizen children, three of whom live with him, and one has a very severe medical condition, that being cerebral palsy. The petitioner has been living in the United States since 1987, has a good work record, has paid his taxes. So why doesn't the – why isn't the Board's decision supported by substantial evidence with respect to the false statement? Well, the U.S. Supreme Court held in Kunzges v. U.S. that the statutory bar for false testimony under 101F6 applies only to those misrepresentations which are made with the subjective intent of obtaining an immigration benefit. Willful misrepresentations for other reasons, such as embarrassment, fear. Isn't that what the immigration judge found, that he made the statement for the purposes of obtaining immigration benefits? Well, she did, but he states at 103 of – page 103 of the record, when he was confronted with the police report, he stated that I did lie to you, and it was because I didn't want my wife and children to find out what happened, and I'm very sorry for that. And he apologized to the judge and to the trial attorney. Why wasn't the immigration judge entitled at seeing the witness live to discount that explanation and saying, no, I think you lied in order to get an immigration benefit? Well, it's a situation where – I mean, she acknowledged that the conviction itself would not have – Right. It would probably be covered under the petty offense exception. This would not have barred him. He had nothing to gain by giving false testimony about this and everything to gain by telling the truth. He didn't know that at the time, necessarily. Well, he – I guess the question is, I mean, sitting in our position reviewing what the immigration judge did, why wasn't the immigration judge entitled on the record to make that conclusion? Because there was nothing to really refute his claim that the reason I did this – I mean, he stated that, you know, his children didn't know about this or his wife, and he was ashamed. But it wasn't just the theft. I mean, he had the false identification. He had a child in Mexico he hadn't acknowledged on his form. The police report, not only – he said this is a one-time incident. Even when he explained it, the police report would seem to indicate that there were materials in the car from other stores. I mean, there was a lot more than just the one incident. Well, the other factors such as the child in Mexico and the use of a false Social Security number, I don't think the judge really thought that those were major factors. That's extremely common. Most people from Mexico who are here unlawfully have a false Social Security number. And under Beltran's – Right. It's not considered to be an act of moral turpitude. No, I agree with all that. But the problem is, I think, for your client, is that he said – he denied all of those things under oath. Well, he didn't – he didn't have – he didn't put the child in Mexico on the application and, you know, reasonably, because what children do you have? He has four children, three who are U.S. citizens living with him and another who was in proceedings with him. Right. But wasn't he using his son's – Mexico's son's identifications? He had – he used a Social Security number. Right. But the child in Mexico was not included because, I mean, he didn't – he didn't live with him. He's been here since 1987. So I don't think that was the factor. What the judge really focused on was the fact that he had not been forthcoming about his shoplifting offense when he had taken clothes from Irvin's. And, you know, I think that he credibly testified that his – he didn't want his children to know about this. And that – and that's why he – that's why he gave that – that – made the statement. And, you know, I mean, the judge noted that it was a tragic situation. And she also noted that if an appellate court were to overturn her finding on whether this was a bar under 101F6, this is on page 36 of the record in her decision, she said that – she suggested in all likelihood that she would otherwise find, as she did for her – his wife and later for the daughter, that he was eligible. And she particularly noted that his departure is going to cause what she found, you know, extreme hardship for his U.S. citizen child with a severe disability of cerebral palsy and financial hardship to all of his children, including the child in Mexico to whom he sends money. And, you know, it was a – considering what's at stake, the – there should have been something more to say that – when he says, I'm sorry to the court, I did this out of shame and embarrassment, something more to refute that, because that would seem to be a credible statement and a motive for him to have not told the truth. He had no other real reason. It would not have knocked him out as far as his eligibility for the relief he was seeking before the court. Do you want to save some time for rebuttal? Yeah, I'll just reserve time for rebuttal.  Thank you, counsel. Thank you. Dan Shan, on behalf of the United States Government. It's enough to speak up a little. Dan Shan, on behalf of the United States Government. The issue in this case is whether substantial evidence supports I.J.'s finding that the petitioner gave false testimony with the subjective intent of obtaining an immigration benefit, which thereby precluded a finding of good moral character on INA Section 101F6 and thereby rendering him ineligible for cancellation of removal. As Judge Pace correctly pointed out, to sustain this petition for review, the record must compel the conclusion that no reasonable fact-finder could conclude that the petitioner gave false testimony with the subjective intent of obtaining an immigration benefit. Mr. Shea, what other than the falsehood itself did the I.J. have to establish the petitioner's subjective intent? Well, Your Honor, I think the totality of the circumstances, the venue in which the case was, the testimony was given, the fact that good moral character is not defined under the INA, but that it requires a factual determination, and the fact that there's a discretionary element of good moral character all suggests that the story that the petitioner told, the fact that he, even after he was confronted with evidence at the second merits hearing, continued to say he didn't remember and to not accept full responsibility for what he had done, suggests that he himself believed that the good moral character had a discretionary element to it. I'm not sure that quite answered the question. What evidence in the record besides his statement was there? There's nothing, right? I think, again, Your Honor, I think the venue in which the statements were made, I'm not sure what other evidence the government could have put on to show other than circumstantial evidence to infer the intent. I understood you to say that the IJ was relying upon the demeanor of the petitioner. Is that what you were saying? Well, I think the demeanor certainly plays into that. I didn't make that point, Your Honor, but certainly that would play into the IJ's determination as well. That's right, but where was there a demeanor finding? I think the IJ didn't specifically state that there was a demeanor finding. Right. So how do we know? Again, we would infer that from the IJ's conclusion that the petitioner lacked a subjective intent to tell the truth. Well, usually IJs, when they want to make a demeanor finding, they make it specifically because that's what we've required them to do. So we really can't draw a conclusion one way or the other except perhaps inferentially. Right. But the requirement of this circuit usually goes towards credibility. I think the broader question perhaps from my perspective, if this isn't a case where the exception for embarrassment applies, then what is a case? Because there was some external objective evidence of embarrassment because the kids were in the room when he testified the first time, and then they were removed the second time. So if the Supreme Court's exception means anything, what case would it apply in if it doesn't apply in this case? Well, I think certainly at the very least, if the IJ had not called the kids out of the room, I think that that could have been arguably a stronger case in which the embarrassment exception would apply. Or, I mean, I guess draw an analogy to certain credibility findings in this circuit with regard to rape victims. When the IJ finds an adverse credibility finding against them, those would be certainly cases that would qualify for the embarrassment exception. But this is a case where the IJ admonished the Petitioner time and again to tell the truth, had actually called the children out of the room for the purpose of not having them hear the facts surrounding his conviction. Was his wife still in the room at the time he testified? It's unclear from the record, Your Honor. It doesn't say. He says, I didn't want my wife or my children to find out what had happened, and I'm very sorry for that. Right. Were they in the courtroom when you testified last time, sir? I don't remember. But from where I read the record, it was not clear about his wife. Right. It's not clear whether his wife was in the courtroom. And I think also with this particular case, the fact that his conviction was actually brought to light also takes away from some of the embarrassing element of the crime. Had it been a case where he flatly denied ever being convicted of such a crime, I think it would have also made it a stronger case for the embarrassment exception. As opposing counsel pointed out, the court held in Coongates v. United States, the Supreme Court held that a person is of, quote, bad moral character on account of having given false testimony. He's told even the most immaterial lies with the subjective intent of obtaining immigration naturalization benefits. The fact that, well, the fact that he would not have been statutorily barred based on this conviction doesn't change the fact that it goes towards showing that he was a person of bad moral character. The court held in Coongates that the primary purpose of 101-F6 is to prevent is not to prevent false pertinent data from being introduced into the naturalization process, but to identify the lack of good moral character. Do you consider 101-F6 to be in the nature of an affirmative defense? By the government? Yes. In other words, the petitioner puts on his case and then the government comes in and says, no, he's statutorily barred because of this. Is that how you view it? I don't believe 101-F6 actually delineates a burden of proof, but I think the burden of proof is on the alien at all times to ---- Certainly the ultimate burden of proof. I understand that. But in the terms of this issue, you don't have to ---- it's not incumbent on the petitioner in each case to say, no, I'm not statutorily ineligible. Isn't the burden on the government to show statutory ineligibility? Or oughtn't it to be logically? I think that that would ---- I don't think that's clear from the statute itself. It makes sense, doesn't it, though, that the government would have to say he's lying. Right. That's true. And he's doing it because he wants to obtain an immigration benefit? Yes. That would be correct. The government would have to do that. Did the government do that here? The immigration agency did that in this case. And I.J. did. Right. And I.J. is ---- in immigration proceedings, I.J. is allowed to question the ---- Did he actually say to ---- did he actually inform the applicant that ---- or the petitioner that he was considering using that statement against him? The fact that he had not told the truth about his conviction. Well, I think certainly the fact that the I.J. stated at the first merits hearing over and over again the importance of telling the truth at his merits hearing would have put the petitioner on notice of such a requirement. But the fact that the I.J. had no reason to believe that the petitioner wasn't, in fact, telling the truth at the first merits hearing gave the I.J. no reason to tell the petitioner that 101F6 might be a bar to cancellation of removal. And I think it's important to note, again, the standard review in this case. I think that even if this is an affirmative defense that the government must show, I think that the standard review for this case is substantial evidence. And so no reasonable factor must be compelled to conclude that he, in fact, was not lying for the purpose of obtaining immigration benefit. And I think certainly given the fact that he told a story that was basically one in which he was completely innocent, the fact that he was just trying to plead guilty to make enough money to support his family was really intended to paint himself in a good light to show that he was a person of good moral character. And so, to be honest, I have no further questions. Roberts. Okay. Thank you, counsel. Thank you. Another rebuttal. I just heard briefly the – I didn't agree with the statement about the venue, that that was important. It's always the case that you're before an immigration judge seeking relief. So I don't think there's any particular – anything particularly different about the venue in this case. I think what's lacking is really substantial evidence, you know, after he made his statement that I lied for – because I was embarrassed, because I didn't want my wife to know of this, I didn't want my children to know about it. It wasn't really returned to for questioning him about, well, what was his motive? What – you know, I don't think the government really made an attempt to refute that. They sort of just dismissed that because that's – you know, well, he's just saying that. But I think that they had to present something on the record which would – I think that they had to present something on the record which would – I think that they had to present something on the record which would sort of question him regarding that and establish that he understood that he was – or to show that he was attempting to gain an immigration benefit. Do you think D.I.J. raised the issue sufficiently? No. Why not? Well, she – I mean, she admonished him to tell the truth, and he didn't. And then they came back, and he said – you know, he apologized for it. And she never really came out and said why she didn't accept the apology. She said, like, well, I find that he was doing this to get an immigration benefit. Do you think he needs – she needs to – D.I.J. needs to specifically address his excuse? I think she does. She's talking about a statutory bar. It's not – you know, it's just a matter of discretion. She's saying that he's statutorily ineligible for any form of relief under the Immigration and Nationality Act. I think it has to be nailed down pretty firmly that he had the subjective intent to get an immigration benefit. And his line about this thing didn't even really make sense in the context. Clearly, he did a stupid thing to avoid embarrassment. But under the Supreme Court's holding in Kunj, I think that's how it's pronounced, that's not enough. And, you know, the Court recognized there that in light of the consequences of denial of this type, there has to be really substantial evidence in the record that that was his intent. And the record we have here simply doesn't do that. Thank you, counsel. Thank you. I appreciate both of your arguments. The case is terminated. Thank you for your decision. Thank you.
judges: Thomas, Paez, Walker